THE STATE (ROBESON AND OTHERS, Prosecutors,) *vs.* GEORGE
MELLICK, ASSESSOR OF THE TOWN OF BELVIDERE.

1. The act incorporating the town of Belvidere, passed in the year 1845,
(*Pamph. L.* 108) is an act regulating public schools therein, and is not changed
by the acts of 1846 and 18 4.

2. The provisions of the act of 1838 are in full force there, except so far as
changed by the charter; and the town tax for school purposes cannot law-
fully exceed double the amount apportioned thereto from the state school
fund.

*Certiorari* in matter of taxation.

Argued before Justices ELMER, POTTS, and VREDEN-
BURGH ; *G. M. Robeson*, for the prosecutors, *W. L. Day-
ton*, contra.

ELMER, J. The *certiorari* in this case has been wrongly
directed to the assessor, and could not be sustained, had not
the counsel for the town, to prevent delay and to obtain the
opinion of the court on the questions involved, consented to
waive the objection.

The prosecutors object to the tax assessed upon them
in the town of Belvidere for school purposes, by virtue of
a vote of the inhabitants at a regular town meeting and
of votes of two-thirds of the inhabitants of the school dis-
tricts into which the town has been divided, insisting that
the said taxes have been illegally imposed.    It appears
that the town of Belvidere was incorporated in the year
1845, *Pamph. L.* 108, the second section of the charter
enacting, that the said corporation, in addition to the
rights, privileges, and immunities granted, and the duties
and obligations imposed by this act, shall be entitled to
all the rights, privileges, and immunities conferred, and
subject to all the duties, restrictions, and liabilities im-
posed by the laws of this state upon the inhabitants of
the several townships thereof, so far as the same are con-
sistent with the provisions of this act.    By the fourth sec-
tion, provision is made for the election of a mayor and
six councilmen, each inhabitant voting for only three of

the latter; and by the seventh section, the common council possess the powers, and are to perform the duties, which by law belong to or are imposed upon the school committees of the townships. By the eighteenth section, the citizens are empowered, at their town meetings, to raise money for the purposes for which the townships in this state are authorized to raise the same, and for such other purposes as are in the act specified. The nineteenth section enacts, that the town shall be entitled to its just proportion of the school fund of the state, to be applied by the common coun cil in the manner prescribed by law.

At the time this charter was granted, the act to establish common schools, passed March 1, 1838, was in force. In 1846 that act was repealed, and the existing law enacted in its place, afterwards modified by the act of 1851. *Nix. Dig.* 733. After the repeal of the act of 1838, a town superintendent of public schools was elected by the town meeting of Belvidere, agreeably to the provisions of the fifth section of the act of 1846, who divided the town into two school districts. After the act of 1851, these districts were incorporated, and the inhabitants ordered taxes to be raised for the public schools of said districts, pursuant to the eleventh section of that act. The tax ordered to be raised by the town meeting, instead of being confined, as the school law of 1838 directed, to double the amount apportioned from the state fund, was enlarged to the extent of three dollars for each child, as authorized by the act of 1851. It is now insisted, by the prosecutors, that these acts of 1846 and 1851 are not in force in the town of Belvidere, and that the taxes for school purposes are illegal. Some objection was also made to the poll tax, which the facts do not sustain.

It was held by this court, in the cases of *The State* v. *Branin*, 3 *Zab.* 485, and of *The State* v. *Minton*, *Ib.* 529, that the provisions of a special charter will not be repealed or modified by a general act, unless it clearly appears that

such was the intention of the legislature. The counsel for the town insisted that the second section of the charter of Belvidere made that town one of the townships of the state, and subjected it not only to the existing laws regulating the other townships, but to such as should be afterwards enacted. If it be admitted, for the purposes of this case, that such is the meaning of that section, it must be remembered that this section provides that this shall be so only "so far as the same are consistent with the provisions of this act." The changes prescribed by the acts of 1846 and 1851, are entirely inconsistent with the charter, and cannot be carried into effect without materially altering it. The charter vests the duty of making and altering school districts and of calling meetings, that is, in effect, the duty of applying all the details of the then existing school law in the common council, whereas, by the new acts, these duties are devolved on a town superintendent elected in a different manner. The right given, by the act of 1851, to impose taxes on the estates of the inhabitants of particular districts by a vote of two-thirds, is not a right or privilege belonging to a township, as such, and is not, therefore, embraced by the words or the spirit of the second section of the charter. The repealing clause of the act of 1851, expressly provides, "that nothing therein shall repeal or alter the provisions of any act providing for or regulating public schools or taxation for school purposes in any particular city, borough, township, ward, or district of this state." It cannot be denied, I think, that the charter of Belvidere is an act regulating public schools therein, and it follows that it remains unchanged by the act of 1851. The provisions of the act of 1838, except as changed by the charter, remain in force there. If they need alteration, so as to conform the school laws of Belvidere more nearly to those prevailing in other parts of the state, the legislature can provide the remedy.

The act of 1851, not being in force in that place, it

follows that the town tax for school purposes could not lawfully exceed double the amount apportioned thereto from the state school fund, and that the prosecutors' taxes for the year 1855, must be reduced accordingly. The taxes ordered to be raised in the school districts, being wholly unauthorized, must be set aside.

Justices POTTS and VREEDENBURGH, concurred.